UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASMINE MILLER,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>A-1 EXPRESS DELIVERY SERVICES, INC.,<br><br>　　　　Defendant. | Case No. 16-cv-06251-WHO<br><br>**ORDER GRANTING MOTION TO REMAND**<br><br>Re: Dkt. No. 13 |

## INTRODUCTION

Plaintiff Jasmine Miller originally filed this wage and hour putative class action against defendant A-1 Express Delivery Service, Inc., d/b/a 1800-Courier, Inc. ("A-1 Express") in the Superior Court of California, County of Alameda. She now moves to remand, challenging A-1 Express's potential damages calculations used to establish the requisite amount in controversy under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Because I find that A-1 Express based its calculations on an erroneous interpretation of the class and failed to support its assertion of the number of class members who worked full time, it has not shown by a preponderance of the evidence that the amount in controversy exceeds $5,000,000. The motion to remand is GRANTED.

## BACKGROUND

On September 21, 2016, Miller, a California citizen, filed this putative class action in state court, seeking to represent "[a]ll persons who work or worked for A-1 Express Delivery Service, Inc. d/b/a 1800-Courier, Inc., providing package pick-up and delivery services in the state of California at any time within the applicable statutes of limitations." Notice of Removal ("NOR")

(Dkt. No. 1), Ex. A ("Complaint") ¶¶ 10, 37.[1]  A-1 Express Delivery Service, Inc. is a Georgia corporation with its principal place of business in Atlanta, Georgia.  Second Declaration of Lon Fancher (Dkt. No. 14-1) ¶¶ 2-3.  A-1 Express Delivery Service, Inc. d/b/a/ 1800-Courier, Inc. is registered to do business in California.  Compl. ¶ 11.

Miller asserts eight claims under California law:  (1) failure to pay overtime premium pay; (2) failure to pay meal period premium pay; (3) failure to pay rest period premium pay; (4) failure to reimburse for necessary business expenses; (5) failure to keep accurate, itemized wage statements upon payment of wages and failure to keep accurate payroll records; (6) failure to pay compensation upon termination of employment; (7) unfair business practices in violation of the Business and Professions Code § 17200 *et seq.*; and (8) an accounting.  The complaint alleges that there is no federal jurisdiction under CAFA.  Compl. ¶ 9.

On October 28, 2016, A-1 Express filed a Notice of Removal, asserting that CAFA jurisdiction exists because:  (1) there are at least 100 class members; (2) at least one plaintiff is diverse in citizenship from any defendant; and (3) the amount in controversy exceeds $5,000,000.  The Notice of Removal's amount in controversy calculation is supported only by the First Declaration of Lon Fancher, which provides: the total number of package pick-up and delivery persons employed in California by A-1 Express Delivery Service, Inc., since September 2012; the average number of package pick-up and delivery persons consistently employed in California by A-1 Express Delivery Service, Inc., between October 2013 and September 2016; the total number of voluntarily and involuntarily terminated employees within the year prior to the complaint's filing; and the minimum hourly-rate for full-time employees.  Dkt. No. 1-2.

In order to assert an amount in controversy exceeding $5,000,000, A-1 Express calculated potential damages as follows for four of Miller's claims, plus attorneys' fees.

---

[1] Exhibit A to the Notice of Removal also contains A-1 Express's Answer, which was filed in the state court on October 27, 2016.  However, all of the above citations to Exhibit A reference only the Complaint.

2

### A.  Meal and Rest Breaks (Claims Two and Three)

In the Notice of Removal, A-1 Express assumed an average of one missed meal break and one missed rest break each day.  NOR at 4.  It estimated that missed meal and rest break premiums would result in potential damages of $4,410,000 (2 breaks per day x $10 per break x 21 workdays per month x 35 months x 300 employees).  *Id.*  In its opposition to the remand motion, A-1 Express offers a more conservative estimate based on two missed breaks per week, per employee.  Opposition (Dkt. No. 14) at 7.  In this scenario, it calculated potential damages of $1,728,000 ((1 meal break plus 1 rest break per day) x $10 per break x 8 violations per month x 36 months x 300 employees).  *Id.*  (A-1 Express does not explain why it included an additional month in this calculation.)

### B. Timely Payment of Final Wages to Terminated Employees (Claim Six)

Miller also brings a claim for waiting time penalties based on A-1 Express's alleged failure to timely pay final wages to terminated employees.  "If an employer willfully fails to pay, without abatement or reduction, . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."  Cal. Lab. Code § 203(a).  A-1 Express estimated that damages for the claim for failure to timely pay final wages to terminated employees totals at least $1,680,000 ($10 per hour x 8 hours per day x 30 days x 700 employees).  NOR at 5.

### C.  Itemized Wage Statement (Claim Five)

The California Labor Code provides for penalties of $50 for the first wage statement violation and $100 for each subsequent violation.  Cal. Lab. Code § 226(e)(1).  An itemized wage statement claim must be filed within one year, unless tolled.  Cal. Civ. Pro. Code § 340(a).  A-1 Express calculated that damages under this claim for one year would amount to $15,000 for the first violation ($50 x 300 employees) and $750,000 for the rest of the year ($100 x 25 statements per employee for the year x 300 employees).  NOR at 5.

### D. Attorneys' Fees

Based on 25% of the damages calculations set out in the Notice of Removal, A-1 Express's opposition brief estimates a potential for $1,713,750 in attorneys' fees. Oppo. at 7. Alternatively, based on its more conservative damages estimates, A-1 Express calculates $1,043,250 in potential attorneys' fees. Oppo. at 8.

### E. Total Amount in Controversy

The Notice of Removal's damages calculations for four claims, plus 25% attorneys' fees, totals $8,568,750. The total of A-1 Express's more conservative estimates is $5,216,250.

## LEGAL STANDARD

The Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), gives federal courts original jurisdiction over class actions where there are at least 100 class members, at least one plaintiff is diverse in citizenship from any defendant, and the amount in controversy exceeds $5,000,000. *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015). A class action that meets CAFA standards may be removed to federal court. 28 U.S.C. § 1441(a). Unlike the general presumption against removal, "no antiremoval presumption attends cases invoking CAFA." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014). In fact, Congress intended CAFA jurisdiction to be "interpreted expansively." *Ibarra*, 775 F.3d at 1197.

Under CAFA, a defendant's notice of removal needs only a "plausible allegation that the amount in controversy exceeds the jurisdictional threshold" and does not need evidentiary submissions. *Id.* (quoting *Dart Cherokee Basin Operating Company v. Owens*, 135 S. Ct. 547, 554 (2014)). When testing the amount in controversy alleged, courts look first to the allegations of the complaint. *Id.* If the damages are unstated or if the defendant views the damages as understated, the defendant must show by a preponderance of evidence that the aggregate amount in controversy exceeds the $5,000,000 threshold. *Id.* The defendant in a jurisdictional dispute has the "burden to put forward evidence showing that the amount in controversy exceeds $5 million, to satisfy other requirements of CAFA, and to persuade the court that the estimate of damages in controversy is a reasonable one." *Id.*

4

When the plaintiff contests the defendant's amount-in-controversy allegations, both sides submit proof, and the court decides whether the jurisdictional threshold has been met. *Id.* (quoting *Dart*, 135 S. Ct. at 554). The parties may submit evidence beyond the complaint such as affidavits, declarations, or other "summary-judgment type evidence relevant to the amount in controversy." *Id.* (citing *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)).

The burden to establish the amount in controversy by a preponderance of the evidence does not require the defendant to "research, state, and prove the plaintiff's claims for damages." *Donald v. Xanitos, Inc.*, No. 14-cv-05416-WHO, 2015 WL 1774870, at *4 (N.D. Cal. 2015) (quoting *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204 (E.D. Cal. 2008)). However, "[m]ere speculation and conjecture, with unreasonable assumptions" is not sufficient to establish removal jurisdiction. *Ibarra*, 775 F.3d at 1197; *see also Fong v. Regis Corp.*, No. 13-cv-04497-RS, 2014 WL 26996, at *2 (N.D. Cal. Jan. 2, 2014). "CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Ibarra*, 775 F.3d at 1198.

"When measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaints." *Fong*, 2014 WL 26996 at *2. CAFA "tells the District Court to determine whether it has jurisdiction by adding up the value of the claim[s] of each person who falls within the definition of [the] proposed class and determine whether the resulting sum exceeds $5 million." *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1348 (2013).

**DISCUSSION**

Miller moves to remand on two bases: (1) the Notice of Removal fails to support its allegation regarding A-1 Express's principal place of business; and (2) A-1 Express's amount in controversy calculations are conclusory and speculative. Motion to Remand ("Mot.") (Dkt. No. 13). Although A-1 Express sufficiently established its principal place of business to show

diversity of citizenship, I conclude that it failed to show by a preponderance of the evidence that the amount in controversy exceeds $5,000,000.

### A. Minimal Diversity

Miller withdrew her objection to the allegation that A-1 Express's principal place of business is in Atlanta, Georgia after A-1 Express filed a Second Declaration by Lon Fancher (Dkt. No. 14-1), stating that A-1 Express's headquarters is located in Atlanta, Georgia, from which its "corporate officers and high-ranking managers direct, control, and coordinate business activities nationally," and its "primary executive, administrative, financial, and management functions are conducted." Second Fancher Decl. ¶ 3. Miller's objections are overruled as moot. Because A-1 Express is a Georgia citizen and Miller, a California citizen, seeks to represent a class of California workers, CAFA's diversity of citizenship requirement is met.

### B. Amount in Controversy

Miller challenges A-1 Express's amount in controversy calculations as based on conjecture and speculation, lacking support from summary judgment-type evidence. When a plaintiff contests a defendant's assertion of the amount in controversy, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount in controversy has been satisfied." *Dart*, 135 S.Ct. at 554 (citing 28 U.S.C. § 1446(c)(2)(B)). Although A-1 Express presented additional evidence regarding its principal place of business, it did not do so with respect to its amount in controversy calculations. Miller did not provide any evidence either.

To estimate potential damages, A-1 Express relies solely on the first declaration by Lon Fancher, Chief Operating Officer for A-1 Express Delivery Service, Inc. His declaration defines "Defendant" as "A-1 Express Delivery Service, Inc.," and states, "Between September 21, 2012, and [October 28, 2016], Defendant employed at least 2,000 persons who provided package pick-up and delivery services in California." First Fancher Decl. ¶¶ 1, 3. It also states,

> Defendant, on average, consistently employed at least 300 persons who provided package pick-up and delivery services in California at any given time between October of 2013, and September of 2016. Defendant has paid all full time employees at least $10 per hour during that period.

*Id.* ¶ 4.  Lastly, it provides that between September 21, 2015, and October 28, 2016, "the employment of at least 700 employees of Defendant who provided package pick-up and delivery services in California was terminated either by the employee or by Defendant."  *Id.* ¶ 5.

As Miller notes, A-1 Express has not provided any factual support for the assertion that there are 300 full-time employee equivalents.  Reply at 2.  Miller correctly argues that "there is no foundational or factual basis to conclude that each of the drivers referred to in the [First Fancher Declaration] worked at least 40 hours per week or even 5 or more days in a week."  Reply at 2; *see also* Mot. at 4; Evidentiary Objections at 1-2.  The declaration does not state that the number of people consistently employed by A-1 Express worked full time, or detail any other information regarding their shifts.  Nor does it provide that all of the terminated employees worked 8-hour shifts.  The complaint does not allege this information either.

This matters because A-1 Express's potential damages calculations rely on these assumptions.  For instance, the meal and rest break calculations are premised on the assumption that the employees worked shifts long enough to entitle them to such breaks.  *See* Cal. Labor Code § 512; IWC Wage Order No. 9-2001.  The damages estimate for the failure to timely pay final wages claim assumes that all terminated employees worked 8-hour days.  But there is no evidentiary support or allegation in the complaint that would support these assumptions.  A-1 Express should have provided some basis for assuming that the 300 people that it consistently employed worked full time, or even enough hours to entitle them to a certain breaks under California law.  *See, e.g.*, *Moreno v. Ignite Rest. Grp.*, No. C 13-05091 SI, 2014 WL 1154063, at *4 n.2, *5 (N.D. Cal. Mar. 20, 2014) (finding lack of evidentiary support where "defendants fail to base their use of an 8 hour day on any actual evidence and instead assume the hours their employees worked"); *Blevins v. Republic Refrigeration, Inc.*, No. 15-cv-4019, 2015 WL 12516693, at *10 (C.D. Cal. Sept. 28, 2015) ("To do a credible job of estimating class damages, [the defendant] should, at a minimum, have disclosed what percentage of its employees worked full time rather than part-time during the class period.").

For this reason, I cannot credit the damages calculations for the meal break claim, the rest break claim, and the failure to timely pay final wages claim.  All that is left is A-1 Express's

$765,000 damages estimate for the itemized wage statement claim, plus 25% in attorneys' fees, which falls far short of the $5,000,000 threshold. This is a sufficient basis on its own to grant the motion to remand.

There is another significant problem with A-1 Express's calculations. While there is no dispute that the class size meets the 100-class member requirement for CAFA, A-1 Express based its amount in controversy calculations on an incorrect class definition. Mot. at 1. The complaint defines the proposed class as "[a]ll persons who work or worked for A-1 Express Delivery Service, Inc. d/b/a 1800-Courier, Inc., providing package pick-up and delivery services in the state of California at any time within the applicable statutes of limitations ('Class Period')." Compl. ¶ 37. Miller argues that the Notice of Removal incorrectly included in the proposed class all of A-1 Express's employees in California performing delivery services, rather than only those who provided services for 1800-Courier. Mot. at 1, 4-5; Evidentiary Objections at 1 ("lacks foundation as to the number of 1800-Courier employees (versus other designation)"). A-1 Express contends that the "d/b/a" was included in the class definition "for ease of identification," but was not intended to limit the proposed class to only employees working under the 1800-Courier name. Oppo. at 9.

A-1 Express's argument is unconvincing. Looking at the context of the complaint as a whole, it appears that Miller seeks to represent only those working in relation to the 1800-Courier name. For example, Miller dedicates a paragraph of the complaint to detailing how A-1 Express Delivery Service, Inc., obtained the 1800-Courier name and refers to the 1800-Courier website. Compl. ¶ 11. Miller also alleges that she and "each Class Member she seeks to represent were employed by 1800-Courier in the state of California, providing delivery services for 1800-Courier's contractors and/or customers, including but not limited to, internet-based retailer giant Amazon.com." *Id.* ¶ 17. Moreover, if Miller had intended to represent all A-1 Express delivery workers in California (including those who do not work in connection with the 1800-Courier name), it would have been unnecessary and perhaps misleading to include "d/b/a 1800-Courier, Inc."

The uncertainty regarding the number of putative class members affects the entirety of the amount in controversy calculations. As A-1 Express admits, it "did not split out employees who worked under the 1800-Courier, Inc. [sic] from any that might not have done so," implying that the number of class members would be different if it had. Oppo. at 9.

An additional concern was that A-1 Express assumed an average of one missed meal break and one missed rest break each day, pointing to allegations that meal and rest breaks were "routinely" and "typically" denied, and, for Miller, receiving a break was a "rare occasion." NOR at 4; Compl. ¶¶ 24, 26. It is unreasonable to assume a meal break and a rest break violation occurred each day for each employee based on these allegations. *See Mackall v. Healthsource Glob. Staffing, Inc.*, No. 16-cv-03810-WHO, 2016 WL 4579099, at *4 (N.D. Cal. Sept. 2, 2016) (finding that allegations that a Labor Code violation occurred "regularly" and "consistently" did not support an assumption that a violation occurred every time for every shift). In its opposition, A-1 Express offers a more conservative estimate based on one missed meal break and one missed rest break per week, per employee, which would be reasonable if supported by the evidence. Oppo. at 7. "[S]everal Northern District cases have held that assumptions of one missed meal and break per pay period are reasonable in light of policy and practice allegations and allegations that defendants[] 'regularly' denied class member breaks." *Mackall*, 2016 WL 4579099, at *5 (citing *Garza v. Brinderson Constructors, Inc.*, No. 15-cv-02661-RMW, 2016 WL 1298390, at *3 (N.D. Cal. Apr. 4, 2016); *Tripp v. Crossmark, Inc.*, No. 13-cv-03480-WHO, 2013 WL 5496550, at *2 n.2 (N.D. Cal. Oct. 3, 2013)).

In short, A-1 Express has not met its burden of showing an amount in controversy exceeding $5,000,000. It failed to support its assumptions concerning the number of employees that worked full time, or to provide any other information regarding their shifts. The amount in controversy calculations are premised on an incorrect interpretation of the class definition. Its potential damages estimates are not supported by a preponderance of the evidence.[2]

---

[2] A-1 Express filed a notice of pendency of another proceeding in the Central District of California, *Chacon v. A-1 Express Delivery, Inc. Which Will Do Business as 1800-Courier, Inc.*, Case No. 15-cv-9901, with similar causes of action and a class definition that A-1 Express asserts completely encompasses the proposed class in this action. Dkt. No. 3. If A-1 Express decides to

**CONCLUSION**

Because A-1 Express's allegations concerning the amount in controversy necessary to assert jurisdiction under CAFA are not supported by a preponderance of the evidence, the motion to remand is GRANTED and the case is remanded to the Superior Court of California, County of Alameda. The case management conference set for February 7, 2017, is VACATED.

**IT IS SO ORDERED**.

Dated: February 3, 2017



WILLIAM H. ORRICK
United States District Judge

---

remove this case a second time, its Notice of Removal should consider the impact of the pending Notice of Settlement in *Chacon*.

10